**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| HIGHFIELDS CAPITAL I LP, HIGHFIELDS CAPITAL II LP, and HIGHFIELDS CAPITAL III LP,<br><br>*Plaintiffs*,<br><br>v.<br><br>PERRIGO CO., PLC, JOSEPH PAPA, and JUDY BROWN,<br><br>*Defendants*. | 1:19-cv-10285-GAO |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO TRANSFER VENUE</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 3

ARGUMENT .................................................................................................................. 6

    I.     This Case Could Have Been Filed Properly In The District Of New Jersey,
          Where Fourteen Substantively Similar Securities Cases Are Pending ..................... 7

    II.    Transfer Serves The Interests Of Justice and Preserves Judicial Resources ............ 7

         A.    Fourteen Substantially Similar Securities Cases Are Already Being
              Litigated in New Jersey ................................................................................. 8

         B.    The District of New Jersey Has Expended Substantial Judicial
              Resources ..................................................................................................... 10

    III.   All Other Factors Weigh In Favor Of Transfer ...................................................... 13

         A.    The District of New Jersey Will Be More Convenient For The Parties ......... 13

         B.    The District of New Jersey Will Be More Convenient For Witnesses ........... 14

         C.    Relevant Documents Are More Likely To Be Found In New Jersey ............. 15

         D.    The District Of New Jersey Can Adjudicate All Of Plaintiffs' Claims .......... 15

         E.    The Court Should Not Give Significant Weight To Plaintiffs' Choice
              Of Forum ...................................................................................................... 17

CONCLUSION ............................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974).............................................................................................10

*APA Excelsior III L.P. v. Premiere Techs., Inc.*,
    49 F. Supp. 2d 664 (S.D.N.Y. 1999)................................................................8, 17

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
    571 U.S. 49 (2013)..............................................................................................16

*Berman v. Informix Corp.*,
    30 F. Supp. 2d 653 (S.D.N.Y. 1998).................................................................8, 14

*Block v. Jaguar Land Rover N. Am., LLC*,
    2017 WL 902860 (D.N.J. Mar. 7, 2017)...............................................................16

*Consumer Fin. Prot. Bureau v. CashCall, Inc.*,
    2015 WL 5610813 (D. Mass. Sept. 23, 2015) (O'Toole, J.) ..................................19

*Cont'l Grain Co. v. BargeFBL-585*,
    364 U.S. 19 (1960)................................................................................................8

*Cox v. Chrysler Group, LLC*,
    2015 WL 5771400 (D.N.J. Sept. 30, 2015) .........................................................17

*Dining All., Inc. v. Nat'l Produce Consultants, LLC*,
    2014 WL 6609233 (D. Mass. Nov. 20, 2014) (O'Toole, J.).........................2, 8, 10

*Domtar AI, Inc. v. J.D. Irving, Ltd.*,
    2014 WL 1679713 (E.D. Pa. Apr. 25, 2014) ........................................................11

*Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*,
    2012 WL 12941889 (D. Mass. Sept. 28, 2012) ............................................7, 8, 15

*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990)...............................................................................................3

*Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*,
    2014 WL 3748214 (D.N.J. July 29, 2014).........................................................6, 18

*Friends of Animals v. Phifer*,
    2015 WL 1943898 (D. Mass. Apr. 29, 2015) ......................................................13

*General Dev. Corp. v. Binstein*,
   743 F. Supp. 1115 (D.N.J. 1990) ........................................................................16

*In re Glob. Cash Access Holdings, Inc. Sec. Litig.*,
   2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008) ....................................................14

*Goggins v. All. Capital Mgmt., L.P.*,
   279 F. Supp. 2d 228 (S.D.N.Y. 2003) ...........................................................13, 14

*Hound Partners Offshore Fund, LP et al. v. Valeant Pharms. Int'l, Inc.*,
   2018 WL 1940437 (S.D.N.Y. Apr. 24, 2018) ...............................................10, 12

*IMS Glob. Learning Consortium, Inc. v. Schs. Interoperability Framework Ass'n*,
   2018 WL 662479 (D. Mass. Feb. 1, 2018) ...........................................6, 17, 18

*Island View Residential Treatment Ctr., Inc. v. BlueCross BlueShield of Mass., Inc.*,
   2007 WL 4589335 (D. Mass. Dec. 28, 2007) ....................................................16

*Job Haines Home for the Aged v. Young*,
   936 F. Supp. 223 (D.N.J. 1996) .........................................................................19

*Langley Partners, L.P. v. Tripath Tech., Inc.*,
   2005 WL 2482527 (S.D.N.Y. Oct. 6, 2005) ......................................................12

*Levy v. Welsh*,
   2013 WL 1149152 (E.D.N.Y. Mar. 19, 2013) ...................................................11

*In re Lipitor Antitrust Litig.*,
   336 F. Supp. 3d 395 (D.N.J. 2018) ...................................................................17

*Livingston v. Trane Inc.*,
   2019 WL 397982 (D.N.J. Jan. 31, 2019) ..........................................................16

*Magic Link Garment Ltd. v. ThirdLove, Inc.*,
   2018 WL 6423908 (D. Mass. Dec. 6, 2018) ......................................................17

*Mann v. Liberty League Int'l, LLC*,
   2010 WL 94114 (D. Ariz. Jan. 6, 2010) ............................................................15

*Maverick Fund, L.D.C. v. Lender Processing Servs., Inc.*,
   2013 WL 6467889 (S.D.N.Y. Dec. 10, 2013) ..............................................12, 14

*In re Nematron Corp. Sec. Litig.*,
   30 F. Supp. 2d 397 (S.D.N.Y. 1998) .................................................................13

*United States ex rel. Ondis v. City of Woonsocket, R.I.*,
   480 F. Supp. 2d 434 (D. Mass. 2007) ...............................................................19

*Palagano v. NVIDIA Corp.*,
   2015 WL 5025469 (E.D. Pa. Aug. 25, 2015) ........................................................13

*Roofer's Pension Fund v. Papa*,
   2018 WL 3601229 (D.N.J. July 27, 2018) ..............................................................4

*Schott v. Ivy Asset Mgmt. Corp.*,
   2010 WL 4117467 (N.D. Cal. Oct. 19, 2010) ........................................................11

*Sea Hunt Corp. v. O.S. DeBraak, Ltd.*,
   1986 WL 15476 (D. Mass. Dec. 23, 1986) ..............................................................7

*Trestman v. Microstrategy Inc.*,
   2001 WL 1471707 (E.D. La. Nov. 15, 2001) ........................................................17

*Wiley v. Gerber Prods. Co.*,
   667 F. Supp. 2d 171 (D. Mass. 2009) ........................................................7, 13, 16

*Williams v. City of N.Y.*,
   2006 WL 399456 (S.D.N.Y. Feb. 21, 2006) ..........................................................11

*World Energy Alts., LLC v. Settlemyre Indus., Inc.*,
   671 F. Supp. 2d 215 (D. Mass. 2009) ......................................................................6

*Yang v. Odom*,
   409 F. Supp. 2d 599 (D.N.J. 2006) ........................................................................11

**Statutes**

15 U.S.C. § 78bb(f) ....................................................................................................16

28 U.S.C. § 1391 ..........................................................................................................7

28 U.S.C. § 1404(a) ......................................................................................6, 7, 8, 18

28 U.S.C. § 1658(b)(1) ..............................................................................................10

## PRELIMINARY STATEMENT

In this action, Plaintiffs Highfields Capital I LP, Highfields Capital II LP, and Highfields Capital III LP (the "Highfields Plaintiffs") make allegations and assert claims that are substantively similar to those at issue in *Roofer's Pension Fund, et al. v. Papa, et al.*, No. 2:16-cv-02805-MCA-LDW (D.N.J.) (the "Class Action"), a putative class action that has been pending in the District of New Jersey for nearly three years.[1]  Thirteen opt-out shareholder actions are also pending before the same court based on the same operative facts (collectively, the "Opt-Out Actions," and, together with the Class Action, the "New Jersey Actions").[2]  The Highfields case is the only related U.S. securities case filed outside the District of New Jersey.

As sophisticated hedge fund entities and repeat securities plaintiffs, the Highfields Plaintiffs are well aware of the New Jersey Actions.  Indeed, the Complaint in this action (the "Highfields Complaint" or "HF Compl.") specifically cites a number of those actions.  Yet, the Highfields Plaintiffs seek to burden this Court with a complex, duplicative securities action rather than proceed before the court that has been efficiently managing fourteen substantially similar actions for years.

Transfer to the District of New Jersey is appropriate for multiple reasons.  The threshold

---

[1]  Though this Memorandum uses the term Class Action, Defendants do not concede that a class should be certified in the case pending in New Jersey federal court.

[2]  *Carmignac Gestion, S.A. v. Perrigo Co. plc, et al.*, No. 2:17-cv-10467-MCA-LDW ("*Carmignac*"); *Manning & Napier Advisors, LLC v. Perrigo Co. plc, et al.*, No. 2:18-cv-00674-MCA-LDW; *Pentwater Equity Opportunities Master Fund, Ltd., et al. v. Perrigo Co. plc, et al.*, No. 2:18-cv-01121-MCA-LDW; *Mason Capital L.P., et al. v. Perrigo Co. plc, et al.*, No. 2:18-cv-01119-MCA-LDW ("*Mason*"); *Harel Ins. Co., et al. v. Perrigo Co. plc, et al.*, No. 2:18-cv-02074-MCA-LDW ("*Harel*"); *First Manhattan Co. v. Perrigo Co. plc, et al.*, No. 2:18-cv-02291-MCA-LDW ("*First Manhattan*"); *TIAA-CREF Inv. Mgmt., LLC, et al. v. Perrigo Co. plc, et al.*, No. 2:18-cv-08175-MCA-LDW; *Nationwide Mutual Funds, et al. v. Perrigo Co. plc, et al.*, No. 2:18-cv-15382-MCA-LDW; *Hudson Bay Master Fund Ltd., et al. v. Perrigo Co. plc, et al.*, No. 2:18-cv-16206-MCA-LDW; *WCM Alternatives Event-Driven Fund, et al. v. Perrigo Co. plc, et al.*, No. 2:18-cv-16204-MCA-LDW; *Schwab Capital Trust, et al. v. Perrigo Co. plc, et al.*, No. 2:19-cv-03973-MCA-LDW; *Oz Master Fund, et al. v. Perrigo Co. plc, et al.*, No. 2:19-cv-04900-MCA-LDW; and *Aberdeen Canada Funds, et al. v. Perrigo Co. plc, et al.*, No. 2:19-cv-06560-MCA-LDW.

requirement for a Section 1404 transfer motion—whether the action at issue could have been brought in the proposed transferee venue—is easily satisfied here. In addition, judicial economy and the interests of justice—critical factors under Section 1404—strongly support transfer. This Court has recognized that transfer is appropriate where substantially similar actions are proceeding concurrently in two federal courts. *See Dining All., Inc. v. Nat'l Produce Consultants, LLC*, 2014 WL 6609233, at *1–2 (D. Mass. Nov. 20, 2014) (O'Toole, J.). The efficiencies gained by transfer in such circumstances are substantial.

This case and the New Jersey Actions involve substantially similar underlying allegations and issues, documents, and testimony. The District of New Jersey is not only familiar with the allegations and legal arguments but also has decided a dispositive motion similar to the one that would be filed here. The District of New Jersey has taken substantial steps to coordinate discovery and motions practice in the New Jersey Actions, ensuring that they proceed in an organized fashion. In the nearly three years since the first District of New Jersey action was filed, the parties have exchanged more than 198,000 documents exceeding 1.6 million pages. Absent a transfer, the inefficiencies and inequities will be significant, and the Defendants will face duplicative proceedings in different jurisdictions and the risk of inconsistent results.

Finally, the remaining Section 1404 factors favor transfer. New Jersey is a more convenient venue for witnesses, and it makes no sense to force witnesses to testify a second time in Massachusetts. Moreover, Plaintiffs' choice of a Massachusetts forum is not entitled to significant weight, as Plaintiffs are sophisticated investment funds organized under the laws of Delaware and the Cayman Islands and will suffer no harm from litigating in New Jersey.

The U.S. Supreme Court has held that the purpose of Section 1404 is to "prevent the waste of time, energy, and money" and to "protect litigants, witnesses, and the public against

unnecessary inconvenience and expense." *Ferens v. John Deere Co.*, 494 U.S. 516, 525 (1990).[3]

Transfer of this action to the District of New Jersey serves those goals.

## BACKGROUND

*The New Jersey Actions*.  On May 18, 2016, the putative Class Action was filed in the

District of New Jersey.  On June 21, 2017, lead plaintiffs in the Class Action ("Lead Plaintiffs")

filed a consolidated amended complaint (the operative complaint in the Class Action) alleging

that Perrigo and certain officers and directors made misstatements between April 21, 2015 and

May 3, 2017.  Groner Decl. Ex. B (ECF No. 89 (the "Class Complaint" or "Class Compl.")).

The Class Complaint alleges that "[m]any of the acts and conduct that constitute

violations of law complained of herein occurred in [the District of New Jersey]."  Class Compl.

¶ 25.  In support of that allegation, Lead Plaintiffs cited the fact that Perrigo's former CEO

Joseph Papa, a defendant in the Class Action and this action, "resides in [the District of New

Jersey] and has maintained a residence in [the District of New Jersey] throughout the Class

Period."  *Id.*  Lead Plaintiffs also pointed to the fact that Perrigo "maintains offices and

operations in Piscataway, New Jersey, and Parsippany, New Jersey," that at all relevant times

Perrigo had "significant operations in New Jersey, including a 14,000 square foot research and

development facility in Piscataway Township," which Perrigo describes as "a strategic location

in the hub of New Jersey's pharmaceutical industry," and that Perrigo "operates a research and

development facility in Parsippany, New Jersey."  *Id.* ¶¶ 25, 30.

Each of the thirteen Opt-Out Actions in the District of New Jersey concerns some or all

of the underlying alleged conduct at issue in the Class Action.  The Opt-Out Actions, like the

---

[3]     Unless otherwise provided, citations and internal quotation marks are omitted and emphasis is added.

Class Action, assert securities fraud claims under the Securities Exchange Act of 1934 (the "Exchange Act"). *See* Groner Decl. App. A.[4]

      ***Substantial Motion Practice In The New Jersey Actions***.  On July 27, 2018, Judge Arleo issued a 50-page decision in the Class Action dismissing certain defendants and certain claims. *Roofer's Pension Fund v. Papa*, 2018 WL 3601229 (D.N.J. July 27, 2018).  New Jersey Lead Plaintiffs alleged that Perrigo made material misrepresentations or omissions over the two-year period April 2015 to May 2017, including during Perrigo's effort to defeat an unsolicited tender offer by a competitor, Mylan, N.V. ("Mylan"), in 2015.  *Id*. at *3.  These alleged material misrepresentations and omissions concerned (i) the value of a royalty stream for the multiple sclerosis drug Tysabri®, (ii) Perrigo's organic growth, (iii) alleged "collusive" pricing in Perrigo's generic prescription drugs division, and (iv) the integration of Omega Pharma NV ("Omega") into Perrigo.  *Id*.  Among other things, Judge Arleo dismissed Lead Plaintiffs' claims regarding both the Tysabri® royalty stream and Perrigo's organic growth on the basis that Lead Plaintiffs did not adequately plead scienter in connection with those claims.  *Id.* at *10, 20, 22.  Judge Arleo denied Defendants' motion to dismiss Lead Plaintiffs' Exchange Act Sections 10(b), 14(e), and 20(a) claims regarding generic prescription drug pricing and the integration of Omega.[5]  *Id.* at *12, 15, 22, 24.

      Rather than brief issues already resolved in the Class Action, Defendants and each of the Opt-Out Plaintiffs agreed that "[t]he issues and arguments raised in the briefing in connection with the Motions to Dismiss the Consolidated Class Action shall not be re-briefed" in the Opt-Out Actions.  Rather, the parties agreed that such issues and arguments were to be treated as if

---

[4]     For the Court's convenience, Appendix A to the Groner Declaration lists the fourteen New Jersey Actions and the date of filing, causes of action asserted, and defendants named in each action.
[5]     The Highfields Plaintiffs do not assert the supposed collusive pricing claim.

they had been raised in motions to dismiss each Opt-Out Action and as if they had been "resolved in a similar fashion to the way they were resolved" in the Class Action.[6]  As such, in the Opt-Out Actions, Defendants have only moved to dismiss allegations and claims that were not asserted in the Class Action, such as the claim pursuant to Section 18 of the Exchange Act asserted by some of the Opt-Out Plaintiffs.[7]  Those motions to dismiss are fully briefed and awaiting decision.

**Discovery In The New Jersey Actions**.  Following Judge Arleo's July 2018 decision, the parties commenced discovery.  To date, Defendants have produced more than 198,000 documents, exceeding 1.6 million pages.  Groner Decl. ¶ 3.

Judges Arleo and Wettre have coordinated discovery in the Opt-Out Actions with discovery in the Class Action.[8]  Defendants and the Opt-Out Plaintiffs agreed that documents produced in any of the actions will be deemed produced in each of the actions (with limited specified exceptions).[9]  They have also agreed to include the Opt-Out Plaintiffs in the meet and confer process concerning discovery and in any depositions and to treat interrogatories served in the Class Action as if served in the Opt-Out Actions as well.[10]

**This Action**.  Plaintiffs Highfields Capital I LP and Highfields Capital II LP are organized under Delaware law and Plaintiff Highfields Capital III LP is organized under the laws of the Cayman Islands.  HF Compl. ¶ 8.  Their assets are managed by Highfields Capital Management LP, which they assert is a "registered investment advisor and fund manager with its headquarters and principal place of business located in Boston, Massachusetts."  *Id.*

---

[6]     *E.g.*, Groner Decl. Ex. C (*Carmignac*, EFC No. 30) ¶ 1.
[7]     *E.g.*, Groner Decl. Ex. D (*Carmignac*, ECF No. 41-1).
[8]     *E.g.*, Groner Decl. Ex. C, ¶ 5 ("Discovery shall be coordinated with discovery in the Consolidated Class Action.").
[9]     *E.g.*, Groner Decl. Ex. E (*Harel*, ECF No. 60) ¶ 2.
[10]    *E.g.*, Groner Decl. Ex. E, ¶¶ 3–5.

Each Defendant in this action is also a defendant in the New Jersey Actions, and the factual allegations asserted in this action are substantively similar to the factual allegations in the New Jersey Actions. The Highfields Plaintiffs assert that Perrigo misrepresented numerous aspects of its performance or expected performance in an effort to thwart Mylan's tender offer. HF Compl. ¶¶ 20–96. Plaintiffs in the New Jersey Actions pleaded these same allegations. *E.g.*, Class Compl. ¶¶ 53-65, 92–175, 205-241; Groner Decl. Ex. F (*First Manhattan* Am. Compl.) ¶¶ 65–122, 183-249, 252-334, 370-407. The Highfields Plaintiffs assert claims under Exchange Act Sections 14(e), 20(a), and 18. All of these claims are asserted either in the Class Action or in a number of the thirteen New Jersey Opt-Out Actions. *See* Groner Decl. App. A. The Massachusetts statutory and common law claims alleged by the Highfields Plaintiffs are readily adjudicated by a federal judge in any district.

## ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Accordingly, a court must determine first whether the case might have been brought in the suggested transferee district and, if so, whether convenience and the interest of justice favor transfer." *World Energy Alts., LLC v. Settlemyre Indus., Inc*., 671 F. Supp. 2d 215, 217 (D. Mass. 2009). In making the latter determination, courts consider factors such as the plaintiff's choice of forum, the relative convenience of the parties, the convenience of the witnesses, the location of documents, any connection between the forum and the issues, the law to be applied, and any state or public interests at stake. *See IMS Glob. Learning Consortium, Inc. v. Schs. Interoperability Framework Ass'n*, 2018 WL 662479, at *2 (D. Mass. Feb. 1, 2018). "The determination of how much weight each factor should be given in the transfer analysis is discretionary." *Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, 2014 WL 3748214,

at *4 (D.N.J. July 29, 2014); *see also Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*, 2012 WL 12941889, at *5 (D. Mass. Sept. 28, 2012) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.").

## I.     This Case Could Have Been Filed Properly In The District Of New Jersey, Where Fourteen Substantively Similar Securities Cases Are Pending

Pursuant to 28 U.S.C. § 1391, venue is proper in the District of New Jersey because Mr. Papa (Perrigo's former CEO) resides in New Jersey and Perrigo "has significant operations in New Jersey, including a 14,000 square foot research and development facility in Piscataway Township," which Perrigo describes as "a strategic location in the hub of New Jersey's pharmaceutical industry" and "a research and development facility in Parsippany, New Jersey." Class Compl. ¶¶ 25, 30.  Defendants have not contested personal jurisdiction in the District of New Jersey.  As such, this action "might have been brought" in the District of New Jersey.  *See Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 172-73 (D. Mass. 2009) ("[V]enue is proper wherever any defendant resides.  A corporate defendant resides in any jurisdiction in which it is subject to personal jurisdiction at the time the action is commenced.  Here, [defendant] has consented to personal jurisdiction in California and the action, therefore, 'might have been brought' there."); *Sea Hunt Corp. v. O.S. DeBraak, Ltd.*, 1986 WL 15476, at *3 (D. Mass. Dec. 23, 1986) ("The § 1404(a) transfer requirement that the suit 'might have been brought' in the transferee forum is [] met, as all of the defendants are either Delaware citizens or do business there, so that both personal jurisdiction and venue requirements are met.").

## II.     Transfer Serves The Interests Of Justice and Preserves Judicial Resources

"Many federal courts consider the interest of justice to be decisive—outweighing the other statutory factors—in ruling on a change of venue motion" and "[a]n interest that is

frequently . . . mentioned by the courts is the desire to avoid multiplicity of litigation as a result of a single transaction or event." *Falafel Republic*, 2012 WL 12941889, at *13.  Indeed, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. BargeFBL-585*, 364 U.S. 19, 26 (1960).

### A.     Fourteen Substantially Similar Securities Cases Are Already Being Litigated in New Jersey

Where, as here, "identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision." *Dining All.*, 2014 WL 6609233, at *1; *see also Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 660–61 (S.D.N.Y. 1998) (transferring action to district where the court "has already spent considerable time coordinating" related cases and explaining that pendency of the related cases in the transferee forum "weighs heavily in favor of transfer").  Courts are strongly inclined to transfer cases where numerous related actions are pending in a single district.  *See APA Excelsior III L.P. v. Premiere Techs.*, *Inc*., 49 F. Supp. 2d 664, 668–671 (S.D.N.Y. 1999) ("The overriding consideration in this case is the existence of twenty-two previously-filed and now consolidated actions in [the proposed transferee district].").  "[T]he requirement for identical actions is not to be read . . . literally.  Rather, the inquiry is whether the cases are substantially similar." *Dining All.*, 2014 WL 6609233, at *1.

Here, the Highfields Complaint is substantially similar to the Class Action Complaint. For example:

- Both the Highfields Plaintiffs and Lead Plaintiffs allege that during the pendency of the Mylan tender offer, Perrigo misled investors about Perrigo's reported organic growth rates, the status of the integration of Omega, and the value of the Tysabri® royalty stream.  HF Compl. ¶ 3; Class Compl. ¶ 1.

- The Highfields Plaintiffs repeat, word-for-word, Lead Plaintiffs' allegation regarding when the misleading growth forecasts began and, in doing so, rely on the same *Irish Times* article.  *Compare* HF Compl. ¶ 31 *with* Class Compl. ¶ 63.

- The Highfields Plaintiffs and Lead Plaintiffs both allege that they were shown a pyramid depicting Perrigo's "base, plus plus" strategy during a presentation on April 21, 2015.  Both complaints allege that the "base" or "foundation" of the pyramid was a misleading projection of organic growth.  HF Compl. ¶35; Class Compl. ¶ 99.  Both complaints also allege that Perrigo's April 21, 2015 press release repeated these purportedly misleading growth statements.  HF Compl. ¶ 37; Class Compl. ¶151.

- The Highfields Plaintiffs and Lead Plaintiffs both allege that Judy Brown, Perrigo's former CFO, misled investors when, at the Oppenheimer Consumer Conference on June 23, 2015, she referred to "the 'great marriage' between Perrigo and Omega . . . [and] stated that Perrigo's integration of Omega's international footprint with '35 countries in Europe, many brands, distribution reach' was 'working smoothly.'"  HF Compl. ¶ 55; Class Compl. ¶ 139.

- The Highfields Plaintiffs and Lead Plaintiffs both allege that Joseph Papa, Perrigo's former CEO, misled investors during an earnings call on August 5, 2015 and during a June 2, 2015 investor presentation.  Both complaints allege that, during the August 5, 2015 call, Papa stated "Perrigo had already 'delivered on our Omega integration plan.'"  HF Compl. ¶ 56; Class Compl. ¶ 253.  Both complaints allege that, during the June 2, 2015 presentation, Papa described the "Omega Acquisition as 'immediately accretive.'"  HF Compl. ¶54; Class Compl. ¶ 253.

- The Highfields Plaintiffs and the Lead Plaintiffs both allege that Perrigo made fraudulent statements regarding the Tysabri® "upside."  HF Compl. ¶ 73; Class Compl. ¶ 99.

Indeed, the Highfields Complaint explicitly cites the Class Complaint and relies on the allegations set forth therein to plead its case.  HF Compl. ¶¶ 64, 67.

The allegations in the Highfields Complaint also substantially overlap with the allegations in the Opt-Out Actions.  For example, the Highfields Complaint cites the *First Manhattan* and *Carmignac* opt-out actions in connection with allegations about the Omega integration and it cites the *Carmignac* and *Mason* opt-out actions in connection with allegations about Perrigo's organic growth rate.  HF Compl. ¶¶ 64, 66, 68.

The Highfields Plaintiffs' legal claims likewise overlap with the claims set forth in the New Jersey Actions.

- The Highfields Plaintiffs, Lead Plaintiffs, and a number of the Opt-Out Plaintiffs allege violations of Section 14(e) of the Exchange Act.  HF Compl. ¶ 122; Groner Decl. App. A.

- The Highfields Plaintiffs and a number of the Opt-Out Plaintiffs allege violations of Section 18 of the Exchange Act.  HF Compl. ¶ 135; Groner Decl. App. A.

- The Highfields Plaintiffs, Lead Plaintiffs, and all Opt-Out Plaintiffs allege violations of Section 20(a) of the Exchange Act.  HF Compl. ¶ 129; Groner Decl. App. A.

Moreover, the Highfields Plaintiffs likely will rely on class action tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 552-53 (1974) to attempt to avoid dismissal of their Section 14(e) claim on statute of limitations grounds, as their Section 14(e) claim is premised on events that occurred more than two years before this action was filed.  *See* 28 U.S.C. § 1658(b)(1) (two-year statute of limitations for Section 14(e) claims).  To the extent that the Highfields Plaintiffs now may claim that their allegations are distinct from those in the Class Action, their Section 14(e) claim is untimely.  They cannot have it both ways: distancing themselves from the Class Action to try to establish that this action should not be adjudicated by the same court as the Class Action but likely relying on the Class Action for *American Pipe* tolling to avoid a statute of limitations dismissal.

The Highfields Plaintiffs also have brought Massachusetts statutory and common law claims.  HF Compl. ¶¶ 113–19, 140–66.  The presence of these claims does not defeat transfer.  *See infra* Sec. III(D).  Nor does the presence of these claims change the fact that this action is "substantially similar" to the fourteen actions pending in the District of New Jersey.  *See Dining All.*, 2014 WL 6609233, at *1.

**B.      The District of New Jersey Has Expended Substantial Judicial Resources**

Transfer to the District of New Jersey is particularly appropriate in light of the fact that Judges Arleo and Wettre have actively managed the New Jersey Actions for nearly three years.  *See Hound Partners Offshore Fund, LP et al. v. Valeant Pharms. Int'l, Inc.*, 2018 WL 1940437,

at *5 (S.D.N.Y. Apr. 24, 2018) (transferring securities opt-out action to district where court had

overseen two years of related litigation, including a class action and twenty-six related opt-out

actions). "Where [the] judge in [the] proposed transferee district [i]s 'intimately familiar' with

the case at hand, it would be a 'gross waste of judicial resources' not to transfer the case." *Yang*

*v. Odom*, 409 F. Supp. 2d 599, 608–09 (D.N.J. 2006). Indeed, "courts consistently recognize

that the existence of a related action in the transferee district is a strong factor to be weighed with

regard to judicial economy, <u>and may be determinative</u>." *Williams v. City of N.Y.*, 2006 WL

399456, at *3 (S.D.N.Y. Feb. 21, 2006); *see also Domtar AI, Inc. v. J.D. Irving, Ltd.*, 2014 WL

1679713, at *7 (E.D. Pa. Apr. 25, 2014) ("the presence of a related action in the transferee forum

is such a powerful reason to grant a transfer that courts do so even where other . . . factors, such

as the convenience of parties and witnesses, would suggest the opposite.").

Judges Arleo and Wettre have thoroughly and ably managed fourteen actions addressing

similar facts and legal theories for nearly three years. In that time, they have addressed many of

the issues that would be presented to this Court. Judge Arleo has ruled on the legal sufficiency

of Lead Plaintiffs' Section 14(e) and 20(a) claims (claims that substantially overlap with the

claims asserted here), and defendants' motions to dismiss the Section 18 claims pled in some of

the Opt-Out Actions (and pled here as well) are fully briefed and awaiting decision. Judge

Wettre has also held numerous conferences on discovery matters, resolved discovery disputes,

and coordinated the case schedules and discovery. It would be far more efficient for Judges

Arleo and Wettre to handle this case in coordination with the others than for this court to allow to

proceed "duplicative actions in which two federal judges preside over the same basic claims,"

which is "a waste of judicial resources" and would "risk potentially inconsistent results." *Levy v.*

*Welsh*, 2013 WL 1149152, at *6 (E.D.N.Y. Mar. 19, 2013); *see also Schott v. Ivy Asset Mgmt.*

11

*Corp.*, 2010 WL 4117467, at *7 (N.D. Cal. Oct. 19, 2010) (holding that "the added efficiency of adjudicating related litigation in the same venue and the increased likelihood of avoiding inconsistent rulings weigh in favor of transfer.").

The Southern District of New York recently transferred an action in similar circumstances. In *Valeant*, three investment fund plaintiffs filed an opt-out action in the Southern District of New York, even though a class action and 26 opt-out actions had been pending for more than two years in the District of New Jersey. 2018 WL 1940437, at *1. The court transferred the action, explaining that "[t]he suite of actions are based on the same facts and involve similar claims" and that "[a]mong the most significant factors that can weigh in favor of transfer is coordination with related litigation, particularly when the proposed transferee court has already spent years acquiring familiarity with that litigation." *Id.* at *4–5. The court also noted that "the presence of the twenty-seven other actions in New Jersey and the efforts that [the New Jersey court] has devoted to them are compelling reasons to transfer this case." *Id.* at *5. Transfer here will likewise serve the interests of justice and judicial economy. *See Maverick Fund, L.D.C. v. Lender Processing Servs., Inc.*, 2013 WL 6467889, at *3 (S.D.N.Y. Dec. 10, 2013) (where transferee court "spent three years acquiring familiarity with the allegations regarding the specific fraud at issue here" and "already addressed the merits of the class action complaint," on which the complaint in the related action "dr[ew] heavily," it was "far more efficient for [the transferee court] to supervise th[e] related action as well"); *Langley Partners, L.P. v. Tripath Tech., Inc.*, 2005 WL 2482527, at *3 (S.D.N.Y. Oct. 6, 2005) (transfer was "in the interest of the efficient administration of justice" because, among other reasons, there was "a closely related consolidated class action already pending" in the transferee district).[11]

---

[11]    For these same reasons, consideration of the public interests also supports transfer to the District of New Jersey, where two federal judges have dedicated nearly three years to the adjudication of

## III.   All Other Factors Weigh In Favor Of Transfer

### A.   The District of New Jersey Will Be More Convenient For The Parties

Securities fraud actions "focus almost entirely on the defendant's conduct." *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 402 (S.D.N.Y. 1998); *see also Goggins v. All. Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 233 (S.D.N.Y. 2003) (similar).  "Accordingly, the convenience of the defendants and witnesses is the appropriate focus" when considering a motion to transfer.  *Goggins*, 279 F. Supp. 2d at 233.

Here, the more convenient forum for Defendants is the District of New Jersey, where they are already defending fourteen related actions.  Courts take into account the pendency of related actions in considering this factor.  For example, this Court transferred an action to the Southern District of California, where just one substantively similar action was pending. Rejecting plaintiffs' argument that the District of Massachusetts might be a more convenient forum, the Court explained that "convenience should not be assessed in a vacuum" and that "the proper inquiry is not whether Massachusetts is more convenient than [the transferee district] in the abstract but instead whether sanctioning a second, nearly identical action here is more convenient than transferring the case for the purpose of consolidation."  *Wiley*, 667 F. Supp. 2d at 173.  This reasoning is only amplified by the existence of *fourteen* substantively similar actions pending in the District of New Jersey.  *See Palagano v. NVIDIA Corp.*, 2015 WL 5025469, at *7 (E.D. Pa. Aug. 25, 2015) (rejecting plaintiff's argument that "transferring venue would do nothing more than [shift] the inconvenience from one party to another" because "there are 12 other putative class actions pending in the [transferee district] against [the company]

---

substantially similar claims.  *See Friends of Animals v. Phifer*, 2015 WL 1943898, at *2 (D. Mass. Apr. 29, 2015) ("Public factors . . . encompass the statutory consideration of the interest of justice . . . [and] . . . focus on judicial economy").

arising from the same alleged misrepresentations" and therefore the company "would be burdened a great deal more [absent transfer] . . . because it is defending lawsuits based on the same decisions at issue in this case in the proposed transferee forum.").

Moreover, Defendant Joseph Papa, Perrigo's former CEO, resides in New Jersey. Class Compl. ¶ 25. And Perrigo has "significant operations" in New Jersey and "maintains offices and operations in Piscataway, New Jersey, and Parsippany, New Jersey." *Id.* ¶¶ 25, 30. Neither of the individual defendants resides in Massachusetts, nor does Perrigo have an office there.

The Highfields Plaintiffs will not be inconvenienced by litigating in New Jersey. When a plaintiff has limited financial resources, courts sometimes weigh that consideration in favor of allowing a plaintiff to litigate in its home state. *See Berman*, 30 F. Supp. 2d at 659. That principle has no applicability here, as the Highfields Plaintiffs are "very substantial business[es]" and are "able to afford litigation" in New Jersey. *Maverick Fund*, 2013 WL 6467889, at *3.

**B.    The District of New Jersey Will Be More Convenient For Witnesses**

The issue of convenience for the witnesses likewise focuses on the defendants in a securities fraud case like this one. "[I]n cases where, as here, the plaintiff alleges that certain documents contained false or misleading statements, the key witnesses are frequently officers and employees of the issuer who participated in drafting or distributing those statements." *In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008). None of those witnesses are based in Massachusetts, and Mr. Papa (who is alleged to have made 21 of the statements challenged in the Highfields Complaint (¶¶ 30-32, 34, 38-40, 42-44, 50, 52-54, 56, 72, 74, 80, 81, 88, 104)) resides in New Jersey.

Witnesses should not be made to appear multiple times to give the same testimony in connection with substantially similar actions pending in multiple districts. *See Goggins*, 279 F. Supp. 2d at 233 (convenience of the parties and witnesses factors weighed in favor of transfer

where "the denial of transfer would result in two pretrial discovery processes going forward simultaneously," "many of the same individuals are mentioned in both complaints," and "their testimony will likely be sought in both actions").  Under the guidance of a single court, the parties can coordinate discovery and trial so that each witness testifies only once.  Indeed, the court in the New Jersey Actions has already taken considerable steps to coordinate discovery and, specifically, depositions.  *E.g.*, Groner Decl. Ex. E (*Harel*, ECF No. 60) ¶¶ 3–5.  Thus, transfer would be more convenient for the witnesses.  *See Mann v. Liberty League Int'l, LLC*, 2010 WL 94114, at *5 (D. Ariz. Jan. 6, 2010) ("While [the presence of evidence in Arizona] would normally favor an Arizona forum, the situation differs where a similar case is already pending in another district.  Discovery, witness travel, and party travel are inevitable; the Court sees no reason to force the parties and witnesses to undergo the same fact-finding in two tribunals, even if much of the evidence is in Arizona.").

### C.     Relevant Documents Are More Likely To Be Found In New Jersey

Although the Highfields Plaintiffs may argue that any documents in their possession are located in Massachusetts, "[t]he location of documents is not a significant factor in the analysis when such documents are movable," especially given that "[m]odern technology enables relatively easy consolidation of physical documents into electronic form."  *Falafel Republic*, 2012 WL 12941889, at *10.  In any event, relevant documents are more likely to be found in the District of New Jersey than in the District of Massachusetts because Mr. Papa resides in New Jersey and Perrigo "has significant operations in New Jersey, including a 14,000 square foot research and development facility in Piscataway Township," and "a research and development facility in Parsippany, New Jersey."  *See* Class Compl. ¶¶ 25, 30.

### D.     The District Of New Jersey Can Adjudicate All Of Plaintiffs' Claims

In deciding whether to transfer an action, courts consider the law to be applied and the

transferor and transferee courts' ability to apply that governing law.  *Wiley*, 667 F. Supp. 2d at

174.  In this case, the Highfields Plaintiffs invoke three of the same Exchange Act sections as the

Lead Plaintiffs and/or the Opt-Out Plaintiffs.  The federal judges of the District of New Jersey

are plainly capable of deciding these federal law claims.[12]  Indeed, Judge Arleo already issued a

decision concerning the legal sufficiency of Lead Plaintiffs' Sections 14(e) and 20(a) claims and

the parties await decision concerning the fully-briefed motion to dismiss the Section 18 claims

brought by some of the Opt-Out Plaintiffs.

The Highfields Plaintiffs' assertion of Massachusetts statutory and common law claims

does not defeat transfer.  *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571

U.S. 49, 67 (2013) ("federal judges routinely apply the law of a State other than the State in

which they sit").  To the extent the Massachusetts claims survive a motion to dismiss,[13] there is

no reason that a judge in the District of New Jersey would have any difficulty applying

Massachusetts law to the facts at issue here.  *See Island View Residential Treatment Ctr., Inc. v.*

*BlueCross BlueShield of Mass., Inc.*, 2007 WL 4589335, at *8 (D. Mass. Dec. 28, 2007)

(rejecting the notion that Massachusetts district courts are better positioned to apply

Massachusetts law than other district courts).[14]

---

[12]     It is unclear whether the Highfields Plaintiffs are still participating in the Class Action as members of the U.S. Purchaser Class asserting Exchange Act Section 10(b) claims or whether they have decided not to make any Section 10(b) claim and will not participate in any U.S. Purchaser Class recovery.

[13]     For example, the Securities Litigation Uniform Standards Act bars pursuit of certain state law claims in "covered [securities] class actions," which is defined to include "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact."  15 U.S.C. § 78bb(f).

[14]     The Highfields Plaintiffs have brought a claim for unfair business methods under Massachusetts General Law Chapter 93A and common law claims for tortious interference with prospective economic advantage, fraud, negligent misrepresentation, and unjust enrichment. HF Compl. ¶¶ 113–19, 140–66. Judges in the District of New Jersey routinely adjudicate such claims.  *See Block v. Jaguar Land Rover N. Am., LLC*, 2017 WL 902860 (D.N.J. Mar. 7, 2017) (dismissing claims for common law fraud under Massachusetts law, unjust enrichment, and violation of Mass. Gen. Laws Ch. 93A); *Livingston v. Trane Inc.*, 2019 WL 397982 (D.N.J. Jan. 31, 2019) (dismissing claims for violation of Mass. Gen. Laws Ch. 93A, negligent misrepresentation, and unjust enrichment under Massachusetts law); *General Dev. Corp.*

The presence of state law claims in a later-filed action certainly should not bar transfer where, as here, those claims are based on the same operative facts as the claims in the earlier-filed action. *See Trestman v. Microstrategy Inc.*, 2001 WL 1471707, at *7 (E.D. La. Nov. 15, 2001) (granting motion to transfer and noting that "[a]lthough defendants do bring three Louisiana state law claims, . . . they are predicated upon the same factual allegations as the federal securities law claims"). In *APA Excelsior*, for example, the court granted defendants' motion to transfer an action to the district where twenty-two similar actions were pending, even though the plaintiff asserted additional causes of action not pled in the other actions, because "both actions hinge[d] on the same core of operative facts" and transfer would "serve the interests of judicial economy and fairness by avoiding duplicative litigation and the possibility of inconsistent rulings." 49 F. Supp. 2d at 670. The same result is appropriate here.

### E.   The Court Should Not Give Significant Weight To Plaintiffs' Choice Of Forum

Whatever recognition is given to plaintiff's choice of forum, "a plaintiff's choice is not a trump card for all plaintiffs opposing transfer." *Magic Link Garment Ltd. v. ThirdLove, Inc.*, 2018 WL 6423908, at *2 (D. Mass. Dec. 6, 2018). The Highfields Plaintiffs' choice of forum should be given less weight than usual because the Highfields Plaintiffs consist of sophisticated investment funds organized under the laws of Delaware and the Cayman Islands, respectively. *See IMS Glob.,* 2018 WL 662479, at *2–3 (plaintiff's choice of forum "is to be given less weight" and "may be entitled to relatively little deference" when plaintiff is "not a Massachusetts corporation").

---

*v. Binstein*, 743 F. Supp. 1115 (D.N.J. 1990) (adjudicating claims for tortious interference with prospective economic advantage and Mass. Gen. Laws Ch. 93A); *Cox v. Chrysler Group, LLC*, 2015 WL 5771400 (D.N.J. Sept. 30, 2015) (dismissing claim under Mass. Gen. Laws Ch. 93A); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395 (D.N.J. 2018) (same).

This conclusion is not altered merely because the Highfields Plaintiffs' assets are *managed* by Highfields Capital Management LP, a non-party Delaware corporation with its headquarters in Massachusetts.  *See* Groner Decl. Ex. A.  In similar circumstances, the court in *Franklin* granted transfer and affirmed the magistrate judge's determination that, "when weighing the relevant § 1404(a) factors," plaintiffs' choice of venue was entitled to "less weight than the other factors."  2014 WL 3748214, at *4.  There, the plaintiffs, seven mutual funds incorporated outside of New Jersey, brought a securities fraud action in New Jersey federal court and the defendant moved to transfer venue to New York, where a class action involving the same misrepresentations already had been litigated.  *Id.* at *1, 7.  The court rejected the plaintiffs' argument that their choice of forum was entitled to considerable deference because the investment advisor to four of the funds was headquartered in New Jersey, explaining that the investment advisor was a non-party.  *Id.* at *5.  Here, too, the fact that the Highfields Plaintiffs are managed by a non-party headquartered in Massachusetts does not militate in favor of deferring to their choice of forum.  Indeed, even the non-party investment advisor, Highfields Capital Management LP, "is not a Massachusetts corporation."  *IMS Glob.,* 2018 WL 662479, at *3.

Moreover, the law affords the Highfields Plaintiffs' choice of forum less weight for the additional reason that the operative facts giving rise to their claims did not occur principally in Massachusetts.  The Highfields Plaintiffs allege that "the Perrigo Defendants made a number of material misrepresentations and misleading statements and omissions publicly and to Perrigo's shareholders, including substantially and primarily in the Commonwealth of Massachusetts during face-to-face meetings with Highfields Capital representatives and at investor conferences held in Boston . . . ."  HF Compl. ¶ 27.  Despite this broad allegation, the Highfields Complaint

tells a different story when detailing the facts. The Highfields Complaint alleges that Perrigo made misstatements in the *Irish Times*, on an earnings call, in public filings, at conferences in Las Vegas, New York and Boston, and at Perrigo's offices in Michigan. *Id.* ¶¶ 31, 34, 38, 39, 40, 41. The Highfields Plaintiffs acknowledge that their representatives were in attendance during the Las Vegas and New York conferences, at Perrigo's Michigan office, and on the earnings call. *Id.* ¶¶ 39, 40, 41. That similar statements were also received by Highfields' representatives in Boston should carry little weight in the analysis. *See United States ex rel. Ondis v. City of Woonsocket, R.I.*, 480 F. Supp. 2d 434, 436 (D. Mass. 2007) (granting motion to transfer where "[a]ll events except the receipt of the allegedly false claims" occurred outside of Massachusetts). The claims here have no *more* connection to Massachusetts than to many other states. *See Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 2015 WL 5610813, at *1 (D. Mass. Sept. 23, 2015) (O'Toole, J.) (granting motion to transfer where "Massachusetts is one of sixteen States whose laws and public interests are implicated by the plaintiff's complaint"). Therefore, this factor is, at most, neutral.[15]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court transfer this action to the District of New Jersey.

Dated:  May 7, 2019                             Respectfully submitted,

                                                By:  */s/  John F. Sylvia*
                                                    John F. Sylvia (BBO# 555581)

---

[15]    Additionally, keeping this action in Massachusetts is not warranted based on any connection between the forum and the issues. *See Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 230 (D.N.J. 1996) (transferring case to California in part because "[p]laintiff's arguments that the false statements were directed to New Jersey does not make New Jersey a forum which has a significant connection with the operative facts" and New Jersey had "no more connection with the transactions and conduct underlying the case than any other venue to which the material was directed.").

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
  and POPEO, P.C.
Adam L. Sisitsky
Patrick E. McDonough
One Financial Center
Boston, MA  02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241
jsylvia@mintz.com
alsisitsky@mintz.com
pemcdonough@mintz.com

FRIED, FRANK, HARRIS, SHRIVER &
  JACOBSON LLP
James D. Wareham (*admitted pro hac vice*)
James E. Anklam (*admitted pro hac vice*)
801 17th Street, N.W.
Washington, DC  20006
Telephone: (202) 639-7000
Facsimile: (202) 639-7003
james.wareham@friedfrank.com
james.anklam@friedfrank.com

Samuel P. Groner (*admitted pro hac vice*)
One New York Plaza
New York, New York  10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
samuel.groner@friedfrank.com

*Counsel for Defendant Perrigo Company plc*


By: */s/  Joshua S. Lipshutz*
    Joshua S. Lipshutz (BBO# 675305)

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone: (202) 955-8217
Facsimile: (202) 530-9614
jlipshutz@gibsondunn.com

Reed Brodsky (*admitted pro hac vice*)
Aric H. Wu (*admitted pro hac vice*)
David F. Crowley-Buck (*admitted pro hac vice*)

20

200 Park Avenue
New York, New York  10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
rbrodsky@gibsondunn.com
awu@gibsondunn.com
dcrowleybuck@gibsondunn.com

*Counsel for Defendant Joseph Papa*


By: */s/  John F. Sylvia*
    John F. Sylvia (BBO# 555581)

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
  and POPEO, P.C.
Adam L. Sisitsky
Patrick E. McDonough
One Financial Center
Boston, MA  02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241
jsylvia@mintz.com
alsisitsky@mintz.com
pemcdonough@mintz.com

SULLIVAN & CROMWELL LLP
John L. Hardiman (*admitted pro hac vice*)
Michael P. Devlin (*admitted pro hac vice*)
125 Broad Street
New York, NY  10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
hardimanj@sullcrom.com
devlinm@sullcrom.com

*Counsel for Defendant Judy Brown*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that this document was filed on May 7, 2019 through the ECF system and

will be sent electronically to the registered participants as identified on the Notice of Electronic

Filing (NEF).

Dated:  May 7, 2019                                    */s/   John F. Sylvia*
                                                                             John F. Sylvia

18313028